

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2006

# Swandayani v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2845

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Swandayani v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1321.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1321

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2845

———

LANNY SWANDAYANI,

*Petitioner*

v.

ATTORNEY GENERAL OF THE UNITED STATES,

*Respondent*

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A95-146-858

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 31, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed April 4, 2006)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Lanny Swandayani is a Christian Chinese citizen of Indonesia and petitions for review

of the Board of Immigration Appeals's ("BIA") Order of May 3, 2005, which Order affirmed

the October 20, 2003, decision of an Immigration Judge ("IJ") that denied her claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("Convention Against Torture"). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and for the reasons set forth below, we will deny the petition for review.

## I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. Swandayani entered the United States in 1998, and on August 28, 2001, the Immigration and Naturalization Service served her with a Notice to Appear, charging her with being subject to removal under 8 U.S.C. § 1227(a)(1)(B) as an alien admitted to the United States as a non-immigrant who remained in the United States for a period longer than that which was authorized.

On March 19, 2002, Swandayani appeared before an IJ. She conceded her removability but sought asylum, withholding of removal, Convention Against Torture relief, and, in the event no relief was granted, voluntary departure. At a merits hearing before an IJ on October 20, 2003, Swandayani testified that after living in Taiwan from 1993 to 1996, she moved to Puri Indah Didoarjo, Indonesia in 1997. She left that town for the United States because of several incidents, which we detail below.

In the first of these incidents, Swandayani was intimidated by groups of people marching in the streets and throwing firecrackers during the month of Ramadan, a Muslim holiday. In a second incident, Swandayani was shouted at by a group of native Indonesians,

2

who claimed that they wanted to rob her and her friends but did not ultimately do so. Swandayani testified to a third incident, in which a group of native Indonesians hurled stones at her and her son while driving in his car, yelling, "eat these stones, Chinese" as they threw the stones. One of these stones cut her son's cheek. Swandayani reported the incident to the police but the police did not take any action. Finally, Swandayani testified that while with her son in his car in January, 1998, a group of native Indonesians on motorcycles revved their engines and that one of these individuals punched her son in the nose after he made eye contact with them. The police took no action when Swandayani told them of this incident.

After the January, 1998, incident, Swandayani felt threatened and decided to come to the United States. At that time, she went to the California home of her brother-in-law, a United States citizen. Swandayani testified that she feared returning to Indonesia because of problems between Catholics and Muslims, and testified to her belief that native Indonesians believed that Chinese fared better economically than did native Indonesians.

On cross-examination, Swandayani admitted that she did not fear returning to Indonesia in 1996 after her three years in Taiwan. She also admitted that she was not harmed during either incident involving her son and his car. Finally, Swandayani admitted that two of her sons still live in Indonesia, as well as her brother, her brother's two children, and five of her own grandchildren.

At the conclusion of the hearing, the IJ rendered an oral decision. In that decision, the IJ accepted Swandayani's testimony as true, but denied Swandayani's asylum application

3

under 8 U.S.C. § 1158(a)(3) because she had filed the application more than one year after her arrival in the United States and there were no extraordinary circumstances that warranted tolling the one year limitations period. The IJ concluded that even had Swandayani's asylum application been timely, it would have been denied because there was no evidence she had suffered past persecution or had a well-founded fear of future persecution if returned to Indonesia. The IJ next denied Swandayani's application for withholding of removal on the ground that there was no evidence that she would more likely than not suffer persecution if returned to Indonesia. Finally, the IJ denied her Convention Against Torture claim because there was no evidence that it was more likely than not that she would be tortured if returned to Indonesia. Swandayani appealed the IJ's decision to the BIA, which affirmed the IJ.

## II.

Pursuant to 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Determinations that an alien experienced persecution or has a well founded fear of persecution are findings of fact reviewed under the substantial evidence standard. *See Abdille v. Ashcroft*, 242 F.3d 477, 483 84 (3d Cir. 2001) (holding that agency's finding "must be upheld unless the evidence not only supports a contrary conclusion, but compels it"). With respect to a claim for withholding of removal, "[w]hether an asylum applicant has demonstrated past persecution or a well founded fear of future persecution is a factual determination," and is reviewed for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272

4

(3d Cir. 2002). Under this standard, we will uphold the agency's findings of fact to the extent that they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id.*

### III.

### A. Asylum

We have held that we lack jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period and the limitations period was not tolled by extraordinary circumstances. *Tarawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003). Accordingly, because the IJ determined that Swandayani's asylum application was untimely under 8 U.S.C. § 1158(a)(3) because it was filed more than one year from the date of her arrival in the United States and the applicable limitations period was not tolled by extraordinary circumstances, we are without jurisdiction to review that decision. *Id.*

### B. Withholding of Removal

An alien seeking withholding of removal must establish by a "clear probability" that his life or freedom would be threatened in his country of origin because of, *inter alia*, his race or religion. *Chang v. INS*, 119 F.3d 1055, 1059 (3d Cir. 1997). To meet this burden, the applicant must demonstrate that it is more likely than not that he will be persecuted upon his return. *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). An applicant can establish eligibility for withholding of removal either by demonstrating past persecution or by showing a likelihood of future persecution. *See* 8 C.F.R. § 1208.16(b).

5

Our review of the record in this case leads us to conclude that the BIA's finding that Swandayani failed to show a clear probability that her life or freedom would be threatened if returned to Indonesia was supported by substantial evidence. The incidents upon which Swandayani relies upon are similar to those recounted in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), in which we rejected a petition for withholding of removal asserted by an ethnic Chinese Christian from Indonesia. As we stated in *Lie*, "isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, [are] not sufficiently severe to be considered persecution." *Id.* at 536. Hence, while Swandayani and her son were accosted on two separate occasions by small groups of individuals and her son injured on both of these occasions, these incidents were "isolated acts perpetrated by unknown assailants" and we agree with the BIA that they are insufficient to support Swandayani's withholding of removal claim. *Id.* Similarly, the incidents in which Swandayani was (1) intimidated by a group of individuals throwing firecrackers and (2) threatened by with robbery by a different group of individuals were not sufficiently severe to qualify as persecution. *See Fatin v. INS*, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993) (observing that "persecution" denotes "extreme conduct," including "threats to life, confinement, torture and economic restrictions so severe that they constitute a threat to life or freedom."). Accordingly, we conclude that the BIA's finding that Swandayani did not suffer past persecution was supported by substantial evidence.

Our review of the record similarly leaves us satisfied that substantial evidence

6

supports the BIA's determination that Swandayani did not establish a well-founded fear of future persecution. The documents submitted in support of Swandayani's application do not compel a finding different than that reached by the BIA, and the fact that Swandayani's children and grandchildren continue to remain in Indonesia undercuts her claim that her own life or freedom would be threatened if returned to that country. *See Lie*, 396 F.3d at 537 ("We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of persecution is diminished.").

## C. Convention Against Torture

Swandayani offers no argument regarding the BIA's denial of her claim for relief under the Convention Against Torture. Accordingly, that claim is waived. *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993).

## IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we conclude that substantial evidence supports the BIA's decision to deny relief and we will accordingly deny the petition for review.