

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2006

# Goryanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3754

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Goryanto v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1039.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1039

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3754

GORYANTO,

Petitioner,

v.

ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition For Review From The Decision Of
The Board Of Immigration Appeals
(BIA No. A96-264-001)
Immigration Judge: Honorable Miriam K. Mills

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2006

Before: AMBRO and FUENTES, Circuit Judges,
and IRENAS,* District Judge

(Filed: May 25, 2006 )

OPINION

---

*The Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

IRENAS, Senior District Judge

Petitioner Goryanto appeals the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") opinion and order denying Goryanto's application for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman and Degrading Treatment or Punishment ("CAT").[1] Pursuant to 8 U.S.C. § 1252, we have jurisdiction over this timely petition for review of the BIA's final determination. For the reasons set forth below, we will deny the petition.

## I.

Goryanto is an Indonesian citizen of Chinese ethnicity. He entered the United States in May, 2001, overstayed his visitor visa and a removal proceeding was instituted against him. After conceding removability, Goryanto appeared at a hearing before the IJ to assert asylum, withholding of removal, and CAT claims. Goryanto asserted that if he returned to Indonesia, he would face persecution and torture because of his Chinese ethnicity.

Goryanto testified that he had two violent encounters in the late 1990s with native Indonesians while in Indonesia.[2] He stated that in May, 1998,[3] riots were erupting

---

[1] CAT has been implemented by regulations codified at 8 C.F.R. §§ 208.16 and 208.18.

[2] These incidents took place against the backdrop of serious and widespread attacks by Muslim Indonesians against individuals of Chinese origin. *See generally, Lie v. Ashcroft*,

throughout Indonesia. A group of native Indonesians stopped the taxi in which he and six of his friends (also of Chinese descent) were riding, and forced the riders our of the car by threatening to burn down the taxi. The group was yelling, "get rid of the Chinese." The assailants beat Goryanto, ordered all of the passengers to strip down naked, and took all of the passengers' clothes and belongings. Thereafter, Goryanto was forced to walk naked for approximately an hour, as onlookers laughed, until he arrived at a friend's house. There is no evidence in the record that Goryanto required any medical treatment after this incident. Nor is there any evidence that Goryanto reported the incident to law enforcement.

The second incident occurred in November, 1999. Goryanto and his girlfriend were riding a motorcycle on their way to a movie theater when they encountered a group of people celebrating a Muslim holiday. The couple heard the group yelling, "Chinese have overtaken the country." A truck full of people pulled up alongside Goryanto's motorcycle, chasing him as he tried to speed away. During the chase, Goryanto and his girlfriend fell off the motorcycle as they attempted to round a corner. The people from the truck beat Goryanto for approximately 15 to 20 minutes and inappropriately touched

---

396 F.3d 530, 532-33 (3d Cir. 2005)(describing how "[i]n the late 1990s, Indonesia's Chinese Christian population became the target of widespread attacks perpetrated by Muslim Indonesians").

[3] Goryanto was 16 years old at the time.

his girlfriend.[4]  Nothing was taken from either Goryanto or his girlfriend.  Goryanto suffered a broken left arm which required a cast.  He also testified that an x-ray revealed that the break required surgery but he could not afford surgery.  Goryanto stated he did not report this incident to the police because the assailants did not take anything from him or his girlfriend.

Further testifying that he feared returning to Indonesia, Goryanto stated that the upcoming elections caused him to worry that ethnic Chinese will be targeted if native Indonesians are dissatisfied with the election results.

Goryanto also relied upon the U.S. State Department's Country Report for Indonesia for 2002  ("Report" or "Country Report"), which described incidents of harassment and discrimination against ethnic Chinese by native Indonesians.

The IJ held that Goryanto was not entitled to asylum because his petition was untimely and he had not demonstrated extraordinary circumstances justifying the late filing.  The IJ also denied Goryanto's withholding of removal claim, holding that Goryanto had not sufficiently established that he had suffered past persecution or feared future persecution in Indonesia.  Lastly, the IJ denied Goryanto's CAT claim because Goryanto's evidence did not establish that he was harmed by the Indonesian government or that the Indonesian government failed to intervene in response to any alleged torture.

---

[4]  It is unclear exactly where or how Goryanto's girlfriend was "touched."  He testified that they touched her "on her forbidden parts in a woman's body."

4

The BIA affirmed.

Goryanto's petition abandons his asylum claim and only asks this Court to review the withholding of removal and CAT claims. For the reasons stated below, we will deny the petition.

## II.

The BIA's order adopted the IJ's decision and, in a few short paragraphs, explained its decision. Thus we review the BIA's decision and the IJ's opinion to the extent it was adopted by the BIA. *Zhang v. Gonzales,* 405 F.3d 150, 155 (3d Cir. 2005); *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). Factual determinations, such as whether an applicant seeking withholding of removal demonstrated past persecution or threat of future persecution, are reviewed for substantial evidence. *Gao*, 299 F.3d at 272. Denials of CAT relief are also subject to substantial evidence review. *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003).

"If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence." *Berishaj v. Ashcroft*, 378 F.3d 314, 322-23 (3d Cir. 2004) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003)(en banc)).

## III.

Goryanto asserts that: (1) he should not have been denied withholding of removal

5

because he put forth sufficient evidence to support his claim; (2) he should not have been denied CAT protection because he established that he has suffered torture and is more likely than not to suffer torture upon his return to Indonesia; and (3) the case should at least be remanded because the BIA failed to adequately explain the rationale for its decision, *see Abdulai v. Ashcroft,* 239 F.3d 542 (3d Cir. 2001).

## A.

An applicant is entitled to withholding of removal if he demonstrates a clear probability that his life or freedom will be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 413 (1984); *Toure v. Atty. Gen. of the U.S.*, 443 F.3d 310, 2006 U.S. App. LEXIS 8239 at *13-14 (3d Cir. April 5, 2006). The question under this standard is whether it is more likely than not that the applicant would be subject to persecution. *Toure*, 2006 U.S. App. 8239 at *13 (quoting *Stevic*). An applicant can establish eligibility for withholding of removal either by demonstrating past persecution or by showing a likelihood of future persecution. 8 C.F.R. § 1208.16(b). "Persecution" is 'extreme conduct' such as 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.' *Lie v. Ashcroft,* 396 F.3d 530, 534, 536 (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)).

In *Lie*, this Court held that an Indonesian asylum applicant of Chinese origin failed

6

to submit sufficient evidence in support of her claims that she had suffered past persecution because she had failed to establish that the two robberies of which she was the victim were "on account of,"--i.e., motivated by-- her ethnicity, and were sufficiently serious to amount to persecution. *Lie,* 396 F.3d at 535-36. The robberies described in *Lie* are very similar to the incidents Goryanto experienced. In both cases, the two incidents were unrelated and isolated criminal acts perpetrated by unknown assailants. In both cases, the assailants uttered a single ethnic slur. Goryanto, like Lie, only suffered the loss of some personal property and a relatively minor injury.

Thus, we conclude that the BIA's determination that Goryanto had not suffered past persecution was supported by substantial evidence. Goryanto's case is even more clear than *Lie*. Lie asserted an asylum claim, which has a lower burden of proof than Goryanto's burden with respect to his withholding of removal claim. *Chen v. Ashcroft,* 376 F.3d 215, 223 (3d Cir. 2004) (contrasting burdens of proof for asylum and withholding of removal claims and explaining, "[a]n alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for a grant of asylum, necessarily will fail to establish the right to withholding of removal").[5]

Substantial evidence also supports the BIA's conclusion that Goryanto had not sufficiently established that his life or freedom would be threatened upon removal to

---

[5] *See also Swandayani v. Atty. Gen. of the U.S.*, No. 05-2845, 2006 U.S. App. LEXIS 8148 at *7-9 (3d Cir. April 4, 2006) (unpublished opinion) (relying on *Lie* to hold that Swandayani, a Chinese citizen of Indonesia, was not entitled to withholding of removal).

7

Indonesia. Goryanto's evidence of past isolated incidents of violence against him-- considered along with his testimony that he was concerned about *potential* attacks on ethnic Chinese after the up-coming elections, and the Country Report describing anti-Chinese sentiment, harassment and discrimination-- does not establish a clear probability that he would face persecution. First, none of the evidence demonstrates that "the violence or harm perpetrated by civilians" which Goryanto asserts he will likely face, is "committed by the government or forces the government is either unable or unwilling to control." *Lie,* 396 F.3d at 537. Second, as explained above, the evidence, even when considered together, is not sufficiently severe to rise to the level of persecution.

Accordingly, we hold that the denial of withholding of removal was supported by substantial evidence.

**B.**

A CAT applicant must establish that "it is more likely than not" that he will be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). In other words, the applicant has the burden to demonstrate "a greater than 50% probability that he would face torture." *Kamara v. Atty. Gen.*, 420 F.3d 202, 213-14 (3d Cir. 2005). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . *by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.*" 8 C.F.R. § 1208.18(1).

8

The BIA held that the IJ correctly concluded that Goryanto had failed to submit sufficient evidence that he would likely face torture at the instigation of or with the acquiescence of the Indonesian government. We hold that the BIA's determination was supported by substantial evidence because Goryanto presented no evidence of any governmental involvement in the two violent assaults he suffered, nor did he report the crimes to law enforcement. Goryanto did not submit any evidence that any Indonesian official knew of, much less acquiesced in, the attacks which he asserts amounted to torture.

Accordingly, we hold that the denial of CAT relief was supported by substantial evidence.

**C.**

Lastly, we address Goryanto's suggestion that we remand this case pursuant to *Abdulai*. While the IJ's corroboration analysis (adopted by the BIA) is somewhat troublesome, we decline to remand because, as explained above, we hold that the BIA's decision that Goryanto failed to sustain his burden of proof was supported by substantial evidence independent of the corroboration analysis.

The BIA agreed with the IJ's conclusion that Goryanto had not put forth sufficient evidence of his claims, stating that the IJ reasonably required corroborating evidence of his testimony, of which Goryanto had presented very little.

Determining whether an applicant's withholding of removal claim requires

9

corroboration is a three-part inquiry: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence." *Toure*, 2006 U.S. App. 8239 at *32 (citing *Abdulai*). "We have repeatedly held that the BIA's (or, as here, IJ's) failure to engage in the three-part inquiry described above requires that the BIA's findings regarding corroboration be vacated and remanded." *Id.* at *32-33.

Although we find that in this case the IJ did engage in the three-part inquiry, we are somewhat concerned by the manner in which the inquiry was conducted. The IJ identified that she expected corroboration of the violent incidents Goryanto said he experienced in 1998 and 1999. She examined the x-ray of Goryanto's arm which Goryanto submitted to corroborate the fact that his arm had indeed been broken. She then asked Goryanto why he did not have letters from his parents or siblings or his girlfriend explaining how he broke his arm or corroborating the earlier robbery in 1998. Goryanto responded by offering a letter from his parents, written in Indonesian, which he stated "explains that I was beaten by the natives, Indonesian, and I had a broken arm." The IJ refused to accept the letter, stating only that the letter was written one year ago, and then she asked Goryanto several questions about whether he could read, write or understand English.[6]

---

[6] The relevance of these particular questions, which appear to have been prompted by the offering of the letter, is somewhat unclear. Even if Goryanto was unable to translate the letter, the removal hearing was conducted through an official Indonesian interpreter

Thus, while the IJ asked questions which identified the facts requiring corroboration and indeed elicited corroboration from Goryanto, she apparently refused to accept the very corroborating evidence she sought, without any explanation as to why she was rejecting it.

In this case, however, even if we assume that Goryanto sufficiently corroborated his testimony, for the reasons explained above, we still hold that substantial evidence supports the conclusion that Goryanto had not carried his burden of proof with respect to his withholding of removal and CAT claims. Accordingly, remand is unnecessary.

**IV.**

Based on the foregoing, we deny Goryanto's Petition for Review in its entirety.

---

who presumably could have translated the letter.

11